## Case No. 10,530.

### O'NEIL v. SEARS.

[2 Spr. 52; [1] 24 Law Rep. 731.]

District Court, D. Massachusetts. Oct., 1862.

COLLISION—VESSEL AT ANCHOR—LOOKOUT—MUTUAL FAULT.

1. Where a vessel anchored in Boston Harbor, without an anchor-watch, was run into by another vessel while getting under way, and the collision could have been avoided if there had been an anchor-watch, both vessels were held in fault,—the one at anchor for not having a watch, and the other for not notifying the one at anchor of the intention to get under way,—it appearing that there was danger of a collision, and that it was known to the vessel getting under way that the other had no watch.

[Cited in The Lady Franklin, Case No. 7,984; The James M. Thompson, 12 Fed. 189; The Delaware, Id. 574.]

2. Where both vessels are in fault, the damages and costs are divided.

[Cited in The Clover, Case No. 2,908; The Mary Patten, Id. 9,223; Vanderbilt v. Reynolds, Id. 16,839; Wells v. Armstrong, 29 Fed. 220.]

This was a libel in personam against the respondent as owner of the yacht Actæa in a cause of collision.

C. G. Thomas, for libellant.

John A. Loring, for respondent.

SPRAGUE, District Judge. The collision took place between two schooners in the harbor of Boston, on a fair day, a whole-sail breeze blowing. The inference is, that one or both the vessels must have been in fault, because on such a day, and in such weather, a collision ought not to take place.

I shall first consider whether the libellant was in fault. His vessel, the January, was lying at anchor in Fore Point channel. The Actæa was getting under way, and in doing so ran foul of the January.

It is insisted that the January was in fault in two particulars:

1st. In being anchored in an improper place.

And 2d. In having no anchor-watch.

These facts are established by the evidence. An ordinance of the city of Boston provides, that all vessels at anchor in the harbor of Boston shall keep an anchor-watch at all times. Another ordinance of the city authorizes the appointment of a harbor-master, and provides, among other things, that he shall have authority "so to regulate the anchorage of vessels, that as far as may be practicable, ferry-boats may pass unobstructed, and the channel shall be kept clear, from the wharves to Castle Island." Among the regulations adopted by the harbor-master, is one

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by John Lathrop, Esq., and here reprinted by permission.]

providing that no vessels shall anchor in Fore Point channel. The January in this case was anchored in this channel, and is therefore prima facie in the wrong. In the case of Cushing v. The John Fraser, 21 How. [62 U. S.] 184, it seems to have been held, that a vessel remaining at anchor in a place longer than allowed by a city ordinance can still recover for injury done to her while there, the custom being to allow vessels to remain there when the thoroughfare was not overcrowded. I do not rest my decision, however, upon the fact of the January being anchored in an improper place, and express no opinion upon it. But as the vessel was in a place where vessels were constantly passing, and as there is an express regulation requiring all vessels at anchor to have an anchor-watch, the January was in fault in not having one; and more especially so, as it is in proof that if a person had been on board the January, the collision would not have happened. The immediate cause of the collision was the bowsprit of the Actæa catching in the toppinglift of the January, and this caused her to swing, and then the bobstay struck the rail of the January. It is proved. that if a person had been on the deck of the January, the collision might have been avoided in three different ways:

1st. By veering the vessel by her rudder.

2d. By letting go the mainsheet, and shoving the mainboom over.

And 3d. By putting out an oar or a boat-hook, and pushing the Actæa off.

I therefore consider the January in fault in not having a proper watch on board.

The next question is, was the Actæa also in fault? The evidence shows that the Actæa came to anchor on the flats near Fore Point channel, and remained there two days; that on the morning of the last day, the January came in, and anchored one hundred feet from her, a little to windward. There were other vessels anchored ahead of the Actæa, and so near, that she could not get under way in the usual manner without running into them. After consultation, it was determined to hoist the jib, haul it to windward, and swing her round on her heel. In doing this the collision occurred. It is insisted that this method of getting under way was an improper one. The evidence shows that it is not the usual way; but I am satisfied. that if the vessel had the right to get under way at all. this was the most judicious way of doing it. I am not prepared to say she had not the right to get under way at all; but considering that she was getting under way in an unusual manner, and there being danger of a collision, it was the duty of the respondent to adopt all means in his power to prevent a collision. According to the testimony introduced by the respondent, if there had been a man on the deck of the January, the collision would not have happened. It was the duty of the respondent to have hailed the January, or to have sent a boat off to her; and if either of these things had been done, the collision would not have happened. It is said the respondent had a right to presume that there was an anchor-watch on board the January. This is very well in theory; but, as he knew there was no anchor-watch, he cannot excuse his not hailing, by saying that there ought to have been one. I consider both vessels to have been in fault; and the damage done to both is to be added together, and divided between the two. The costs also are to be divided.